**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

JULIO YADAICELA,

Plaintiff,

v.

EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC.,

Defendant.

Case No.: 3:26-cv-01171-VDO

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT EASTERN ACCOUNT SYSTEM OF CONNECTICUT, INC. AND INCORPORATED MEMORANDUM OF LAW**

## PRELIMINARY STATEMENT

Plaintiff Julio Yadaicela ("Plaintiff"), through counsel, moves under Federal Rule of Civil Procedure 55(b)(2) for a default judgment against Defendant Eastern Account System of Connecticut, Inc. ("EASCI" or "Defendant"). EASCI was served on July 28, 2026, did not answer or otherwise respond, and the Clerk entered its default on September 24, 2026. ECF Nos. 11, 18.

This case concerns a debt collector that demanded and collected money from an injured worker for medical treatment that New York law dictates he does not owe. Plaintiff was hurt on the job. New York's Workers' Compensation Law is explicit: no provider treating a compensation claimant "shall collect or receive a fee from such claimant," and the provider's recourse for payment runs "only to the employer." N.Y. Workers' Comp. Law § 13-f(1). New York's courts read the statute that way, and federal courts construing nearly identical statutes in other states have held that demanding payment from the injured worker violates the exact same FDCPA provisions at issue herein. EASCI nonetheless sent Plaintiff a letter stating that he owed $626.57 to his treating physician's practice and demanded payment. Afraid that he was legally responsible or would face legal ramifications for nonpayment, Plaintiff paid EASCI $50.00. Those facts, now admitted by EASCI's default, establish violations of 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and 1692f(1). A

court in this Circuit has sustained claims on materially identical facts involving a New York workers' compensation claimant, and courts elsewhere have entered judgment for consumers on the same conduct. Plaintiff asks the Court to enter judgment on liability and to award actual damages, statutory damages, and reasonable attorneys' fees and costs.

## FACTUAL BACKGROUND

### A. Plaintiff's Work Injury and Workers' Compensation Claim

Plaintiff works as a mason tender. On May 19, 2021, while he was on duty, another worker removing wood planks accidentally dropped them onto the back of his head. ECF No. 1 ("Compl.") ¶ 19. On May 20, 2021, the day after his injury, Plaintiff filed an Employee Claim (Form C-3) with the Workers' Compensation Board. Compl. ¶ 20; Ex. D. On December 15, 2021, the Board found that Plaintiff "had a work related injury head neck back" and authorized "[m]edical treatment and care, as necessary, for established sites of injury and/or conditions." Ex. F at 3-4.[1] The medical services at issue here were rendered in connection with that established workers' compensation claim. Compl. ¶¶ 37, 63.

As the Complaint alleges, New York's Workers' Compensation Law prohibits health care

[1] Paragraph 21 of the Complaint describes an April 14, 2025 Notice of Approval as the decision establishing Plaintiff's claim. That notice in fact approved the final resolution of the claim. The Board established the claim earlier, finding on December 15, 2021 that Plaintiff "had a work related injury head neck back" and authorizing treatment for the established sites of injury. Ex. F at 3-4. An allegation inconsistent with facts of which the Court may take judicial notice is simply not treated as well-pleaded; it does not defeat an otherwise sufficient complaint. *See Hop Hing Produces, Inc. v. Lin Zhang Trading Co.*, No. 11-CV-3259 (NGG), 2013 U.S. Dist. LEXIS 109735, at *6-8 & n.6 (E.D.N.Y. July 10, 2013) (disregarding an invoice inconsistent with the plaintiff's statement of account as "erroneously included" and recommending default judgment on the amounts established), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 109513 (E.D.N.Y. July 31, 2013). Paragraph 21 is ***not*** needed to establish liability, which rests on Plaintiff's status as a compensation claimant from the submission of his claim, Compl. ¶ 20; Ex. D. *See Tagliavento v. Borg-Warner Auto*, 252 A.D.2d 753, 753-54 (3d Dep't 1998) ("[T]he filing of a C-3 form by an employee can constitute the commencement of a claim."); *Matter of Perry v. DOCCS Clinton Corr. Facility*, 218 A.D.3d 973, 974 (3d Dep't 2023) (a claim is made where the "C-3 employee claim form or other documents" are "sufficient to provide the Board with the facts of the injury from which it might be reasonably inferred that a ***claim*** for compensation was being made" (internal quotation marks omitted, emphasis added)). Plaintiff filed his C-3 on May 20, 2021, the day after his injury, describing the accident and his injuries to "the head and neck, and the second day I had pain in the middle of my back" Ex. D at 1.

providers from collecting or receiving fees directly from claimants for medical care provided under workers' compensation, and requires the employer to pay the provider's bill or notify the provider that the bill is not being paid and why. *Id.* ¶¶ 23-25 (citing N.Y. Workers' Comp. Law §§ 13-f(1), 13-g(1)). Plaintiff therefore is not responsible for any portion of the medical bills for services rendered in connection with his work injury. *Id.* ¶ 29.

**B. EASCI's Collection Letter**

EASCI is a debt collector that regularly collects debts owed to others, by telephone and mail, in several states, including New York. Compl. ¶¶ 12, 14-15. Its principal place of business is 3 Corporate Drive, Suite 2, Danbury, Connecticut. *Id.* ¶¶ 9, 13. On or about March 16, 2026, EASCI sent Plaintiff a collection letter seeking amounts purportedly owed for services rendered by his healthcare professional in connection with his work-related injuries (the "Collection Letter"). *Id.* ¶ 30; Ex. B. The Collection Letter identified EASCI as a debt collector, falsely stated "[w]e are trying to collect a debt that ***you owe***" to the physician's practice, and listed the "[t]otal amount of the debt now" as $626.57. (emphasis added). EASCI also stated that it would use any information Plaintiff gave it to help collect the debt. Compl. ¶ 32.

Plaintiff did not owe that money, because the debt arose from treatment of his work related injury. *Id.* ¶¶ 33, 36, 63-64. Any statement that he owed the debt is therefore patently false. EASCI knew or should have known that the debt arose from medical services rendered in connection with a workers' compensation claim and that Plaintiff was not liable for it under New York law. EASCI does not attempt to determine whether the medical debts it collects arise from workers' compensation claims, even though it is on notice that many of them do, and it lacks procedures to make that determination before it collects. *Id.* ¶¶ 37-40, 54, 56.

### C. Plaintiff's Payment and Resulting Harm

On or about April 15, 2026, in response to EASCI's collection efforts and out of fear that he was legally responsible for the debt or may face ramifications for nonpayment, Plaintiff made a $50.00 payment to EASCI toward a debt he did not owe. Compl. ¶ 42; Ex. C. He paid to head off the consequences he feared, including added interest, derogatory credit reporting, and damage to his credit. Compl. ¶ 44. The Collection Letter caused Plaintiff significant stress and anxiety because he could not afford the full balance. He worried that he owed money for his medical treatment, that he had been mistaken about his legal obligation, and that he might face legal consequences for not paying. He suffered financial harm, embarrassment, stress, anxiety, frustration, and lost sleep. *Id.* ¶¶ 43, 45-48, 60, 67, 73; *see* Ex. A, ¶¶ 8-17.

## PROCEDURAL HISTORY

Plaintiff filed the Complaint on July 22, 2026, asserting claims under 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and 1692f(1). Compl. ¶¶ 1, 49-74. The Clerk issued the summons on July 27, 2026. ECF No. 10. On July 28, 2026, Plaintiff's process server delivered the summons and Complaint to Amanda Dominguez, Admin, at 3 Corporate Drive, 2nd Floor, Danbury, Connecticut 06810, and declared under penalty of perjury that she is designated by law to accept service of process on behalf of EASCI. ECF No. 11 at 4. The process server also served the Court's initial orders and notices. *Id.* at 1. EASCI's time to respond expired on August 18, 2026. ECF No. 17 ¶ 2; *see* Fed. R. Civ. P. 12(a)(1)(A)(i).

EASCI did not answer, move, or otherwise appear. On September 23, 2026, Plaintiff applied for entry of default, supported by a declaration of counsel stating that EASCI is not a minor or an incompetent person and is not in military service. ECF Nos. 17, 17-1. On September 24, 2026, the Clerk granted the application and directed Plaintiff to file a motion for default judgment

under Rule 55(b) by October 26, 2026. ECF No. 18. As of the date of this motion, EASCI has not appeared or moved to set aside its default.

## ARGUMENT

### I. LEGAL STANDARD

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, when a party against whom affirmative relief is sought has failed to plead or otherwise defend, Rule 55(a) empowers the clerk to enter a default. *Id.* at 504-05. Second, the plaintiff seeks a judgment by default under Rule 55(b); where, as here, the claim is not for a sum certain, Rule 55(b)(2) requires the plaintiff to apply to the court. *Id.* at 505.

"Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true." *Bennett v. Asset Recovery Sols., Ltd. Liab. Co.*, No. 14-CV-4433 (DRH) (SIL), 2017 U.S. Dist. LEXIS 2345, at *4 (E.D.N.Y. Jan. 5, 2017) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 13224 (E.D.N.Y. Jan. 31, 2017); *see also* Fed. R. Civ. P. 8(b)(6). The Court "may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015).

In deciding whether to grant a default judgment, courts in this Circuit look to "the same factors that apply to a motion to set aside a default judgment for good cause, namely: '(1) the willfulness of default, (2) the existence of any meritorious defenses, and (3) prejudice to the non-defaulting party.'" *Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 54 (E.D.N.Y. 2022) (quoting

*Bricklayers*, 779 F.3d at 186).

Once liability is established, the Court must "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). Rule 55(b)(2) "allows but does not require the district judge to conduct a hearing." *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991).

## II. THE COURT HAS JURISDICTION, PLAINTIFF HAS STANDING, AND EASCI WAS PROPERLY SERVED

### A. Subject-Matter Jurisdiction and Article III Standing

The Court has federal-question jurisdiction because Plaintiff's claims arise under the FDCPA, a federal law. Compl. ¶ 8; 28 U.S.C. § 1331; 15 U.S.C. § 1692k(d). Accordingly, this Court has original jurisdiction over all claims asserted against EASCI.

Plaintiff also has Article III standing. In *Aves v. Network Recovery Services, Inc.*, a New York workers' compensation claimant paid a collector for treatment of her work injury after the collector demanded payment, and the collector argued that the payment was a self-inflicted injury. The court rejected that argument: "This is the case of a plaintiff who allegedly paid a debt because the defendant falsely told her she was liable. . . . That is, Plaintiff paid money she did not owe." *Aves v. Network Recovery Servs.*, No. 25-CV-03566 (MMG), 2026 LX 171349, at *9 (S.D.N.Y. Mar. 31, 2026). The court held that this financial loss "is a concrete pocketbook injury," and that it was fairly traceable to the collector because "Plaintiff directly suffered the financial loss because she did exactly what Defendant demanded." *Id.* at *9-10 (emphasis omitted). The same is true

here. Plaintiff paid EASCI $50.00 in response to its demand, out of fear that he was legally responsible. Compl. ¶¶ 42, 44; Ex. C. Plaintiff would not have paid a penny if he did not receive the false and misleading debt collection letter sent by EASCI. The damages he seeks redress that loss.[2]

Plaintiff's emotional distress is a separate concrete harm. In *Almanzar v. Santander Bank, N.A.*, the court held that a plaintiff who described specific distress with a concrete cause, his worry about having no access to credit in an emergency, had shown a concrete injury sufficient to defeat summary judgment on standing, and distinguished allegations of distress that are perfunctory or out of proportion to their cause. *Almanzar v. Santander Bank, N.A.*, No. 23-cv-10706 (AS), 2025 LX 382358, at *11-12 (S.D.N.Y. Aug. 1, 2025). Plaintiff's distress is of that kind. It arose from what the Collection Letter said: that he owed $626.57 for his medical treatment, and demanded payment. Ex. B; Compl. ¶¶ 30-36. Believing his work injury bills were covered by workers' compensation, he became nervous and then panicked, fearing that if he owed this bill he would owe the other medical bills from his injury as well, costs he could never pay, and that the debt would ruin him financially. Ex. A ¶ 11-13. He could not afford even the balance demanded, which caused him significant stress and anxiety; he worried that he had been mistaken about his legal obligation, that he would face legal consequences, and that interest and credit reporting would damage his credit; and the letter brought back painful memories of his accident. Compl. ¶¶ 43-47. Feeling coerced, he paid EASCI $50.00 toward a debt he did not owe. *Id.* ¶¶ 42, 58, 71(c); Ex. C. That distress is neither perfunctory nor out of proportion to its cause: it arose from specific

[2] "Any monetary loss suffered by the plaintiff satisfies this element; '[e]ven a small financial loss' suffices." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, *55 (2d Cir. 2016) (quoting and citing *Natural Resources Defense Council, Inc. v. United States Food & Drug Administration*, 710 F.3d 71, 85 (2d Cir. 2013)). See also *Sonterra Capital Master Fund, Ltd. v. UBS AG*, 954 F.3d 529, 534 (2d Cir. 2020) (citing to Carter and stating that any monetary loss incurred because of an underlying cause of action suffices to constitute an injury in fact); *NRDC, Inc. v. United States FDA*, 710 F.3d 71, 85 (2d Cir. 2013) ("Even a small financial loss is an injury for purposes of Article III standing.").

statements in the letter, centered on specific financial and legal consequences, and was compounded by the underlying trauma of the injury the bill concerned.

**B. Personal Jurisdiction**

A default judgment entered without personal jurisdiction is void, so courts in this Circuit may confirm jurisdiction before entering one. *CKR Law LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474, 479-80 (S.D.N.Y. 2021) (citing *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010)). Plaintiff "need only make a prima facie showing of personal jurisdiction," and the pleadings and supporting materials are construed in his favor. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (internal quotation marks omitted). For this purpose too, pleadings and affidavits are construed "in the light most favorable to plaintiffs, resolving all doubts in their favor." *Id*. (citing *Porina v. Marward Shipping Co*., 521 F.3d 122, 126 (2d Cir. 2008)). Under Rule 4(k)(1)(A), the Court first asks whether Connecticut law permits jurisdiction, and then whether exercising it comports with due process. *Lelchook v. Societe Generale de Banque au Liban SAL*, 67 F.4th 69, 75-76 (2d Cir. 2023); *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013); *Clemco Corp. v. Frantz Mfg. Co.*, 609 F. Supp. 56, 57 (D. Conn. 1985). General jurisdiction permits a court to hear any claim against a defendant, even one unrelated to its forum contacts. *Chloe*, 616 F.3d at 164.

The Court has general jurisdiction over EASCI. "[T]he place of incorporation and the principal place of business are generally viewed as the forums in which the corporation is 'at home.'" *Brown v. CBS Corp.*, 19 F. Supp. 3d 390, 397 (D. Conn. 2014), *aff'd sub nom. Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016). Connecticut is both for EASCI. According to the Connecticut Secretary of the State, EASCI is a domestic Connecticut stock corporation, formed by certificate of incorporation on October 22, 1992, and its business address is 3 Corporate

Drive, 2nd Floor, Danbury, Connecticut. Ex. E at 1, 4. The Complaint likewise alleges that EASCI's principal place of business is in Danbury. Compl. ¶¶ 9, 13. EASCI's own Collection Letter bears that address, Ex. B, and EASCI was served there, ECF No. 11 at 4. As a Connecticut corporation, EASCI is not a nonresident whose amenability to suit depends on Connecticut's long-arm statutes. *See Hart, Nininger & Campbell Assocs., Inc. v. Rogers*, 16 Conn. App. 619, 623 n.1 (1988) (quoting Conn. Gen. Stat. § 52-59b); *Brown*, 19 F. Supp. 3d at 393 (quoting Conn. Gen. Stat. § 33-929). EASCI is at home in Connecticut, and the exercise of jurisdiction over it here comports with due process. *See Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 760 (2014) (the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction" and afford "at least one clear and certain forum in which a corporate defendant may be sued on any and all claims"); *id.* at 139 n.20 ("When a corporation is genuinely at home in the forum State, however, any second-step inquiry would be superfluous.")

Specific jurisdiction lies as well. Plaintiff's claims arise from a collection letter EASCI sent on its Danbury letterhead, which directed him to mail payments and disputes to Danbury. Ex. B; Compl. ¶¶ 30-36. A Connecticut corporation that conducts its collection business from Connecticut has purposefully availed itself of the forum and could readily foresee being sued here. *See Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998); *Hart*, 16 Conn. App. at 625.

**C. Service of Process**

Rule 4(h)(1) permits service on a corporation by delivering the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process, or in the manner state law prescribes. Fed. R. Civ. P. 4(h)(1), 4(e)(1). Plaintiff's process server delivered the summons, the Complaint, and the Court's initial orders to Amanda Dominguez, Admin, at EASCI's Danbury office, and declared under penalty of perjury

that she is designated by law to accept service of process on EASCI's behalf. The server reported that she "accepted the documents without issue." ECF No. 11 at 1, 4. Service was therefore proper.

## III. THE DEFAULT FACTORS FAVOR JUDGMENT

### A. EASCI's Default Is Willful

Willfulness in this context refers to "conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Bad faith is not required; "it is sufficient" to conclude "that the defendant defaulted deliberately." *Bricklayers*, 779 F.3d at 187 (internal quotation marks omitted). "The Second Circuit has held that failure to respond to a complaint demonstrates willful default, so long as service on the defendant is proper." *Canon U.S.A., Inc. v. Sysorex Gov't Servs., Inc.*, No. 2:23-cv-8001 (DLI)(LGD), 2024 U.S. Dist. LEXIS 79881, at *7 (E.D.N.Y. May 1, 2024) (citing *McNulty*, 137 F.3d at 738-39), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 210471 (E.D.N.Y. Sept. 26, 2024); *see also LeGer v. Navila Asset Mgmt. Inc.*, No. 20 CV 3820 (EK)(RML), 2023 U.S. Dist. LEXIS 19829, at *4-6 (E.D.N.Y. Feb. 6, 2023), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 35904 (E.D.N.Y. Mar. 3, 2023).

EASCI was served at its own Danbury office, the same address printed on the Collection Letter it sent Plaintiff. ECF No. 11 at 4; Ex. B. It has had the Complaint since July 28, 2026. It has not answered, moved, asked for more time, or responded to the entry of default. ECF No. 18. Its silence is unexplained, and its default can therefore be deemed willful. *Canon U.S.A., Inc.*, 2024 U.S. Dist. LEXIS 79881, at *7.

### B. EASCI Has No Meritorious Defense To Rely Upon

A defense is meritorious "if it is good at law so as to give the factfinder some determination to make." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 82 (E.D.N.Y. 2020) (quoting

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)). "[W]here a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment." *Id.* (internal quotation marks omitted). Plaintiff must still show that the admitted allegations state valid claims, *id.*, and he does so in Part IV below.

EASCI also could not prevail on the FDCPA's bona fide error defense. That defense, under 15 U.S.C. § 1692k(c), is an affirmative defense on which the debt collector bears the burden of proof. *See Vangorden v. Second Round, L.P.*, 897 F.3d 433, 440, 442 (2d Cir. 2018). EASCI has not appeared to raise it, and the admitted allegations defeat it: EASCI lacks the specific procedures to determine, before it collects, whether a medical debt arises from a workers' compensation claim. Compl. ¶¶ 16, 40, 54, 56. Courts have rejected the defense where a collector's only safeguard against collecting workers' compensation debts operates after the collection attempt. *See Malone v. Accounts Receivable Res., Inc.*, No. 18-CIV-81254-RAR, 2019 U.S. Dist. LEXIS 224951, at *3 (S.D. Fla. Nov. 21, 2019) (ceasing collection after learning of coverage "does not prevent improper collection of workers' compensation claims"); *Flores v. Frost-Arnett Co.*, No. CV-21-01645-PHX-DLR, 2023 LX 107286, at *8-9 (D. Ariz. Jan. 11, 2023) (procedures that depend on the creditor to flag workers' compensation accounts are not reasonably adapted to avoid the specific violation at issue).

### C. Plaintiff Will Be Prejudiced Without a Default Judgment

Denying this motion would prejudice Plaintiff "as there are no additional steps available to secure relief in this Court." *De Reyes v. Tacos El Gallo Giro Corp.*, No. 20-CV-3474-EK-SJB, 2022 U.S. Dist. LEXIS 14544, at *5 (E.D.N.Y. Jan. 25, 2022) (internal quotation marks omitted), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 57050 (E.D.N.Y. Mar. 29, 2022).

EASCI has completely ignored this action. Without a judgment, Plaintiff has no way to recover the money EASCI took from him or to obtain the relief the FDCPA provides.

## IV. THE ADMITTED ALLEGATIONS ESTABLISH EASCI'S LIABILITY UNDER THE FDCPA

To establish a claim under the FDCPA, a plaintiff must show that (1) he is a "consumer," (2) the defendant is a "debt collector," and (3) the defendant committed an act or omission in violation of the statute. *Katz v. Sharinn & Lipshie, P.C.*, No. 12-CV-2440 (MKB), 2013 U.S. Dist. LEXIS 129728, at *4 (E.D.N.Y. Sept. 11, 2013); *Bennett*, 2017 U.S. Dist. LEXIS 2345, at *6; *Aves*, 2026 LX 171349, at *10.

### A. Plaintiff Is a Consumer and EASCI Is a Debt Collector

A "consumer" is "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3); *Bennett*, 2017 U.S. Dist. LEXIS 2345, at *6. Plaintiff is a natural person from whom EASCI demanded payment of an alleged medical debt. Compl. ¶¶ 10, 30-32. The alleged obligation arose from medical treatment provided to Plaintiff, a personal obligation and not a business one. *Id.* ¶¶ 20, 30. A "debt collector" includes any person who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *Bennett*, 2017 U.S. Dist. LEXIS 2345, at *6-7. EASCI regularly collects debts owed to others, by mail and telephone, in several states, including New York, and it identified itself as a debt collector in the Collection Letter. Compl. ¶¶ 12, 14-15, 31; Ex. B. In *Bennett*, materially similar allegations established both elements on default. 2017 U.S. Dist. LEXIS 2345, at *8-9.

### B. New York Law Forbids Collecting This Debt From the Injured Worker

Whether EASCI's demand for payment contained false statements, and whether the amount it took was "permitted by law," turns on what New York's Workers' Compensation Law

says about who pays a provider that treats a compensation claimant. The text answers that question directly, New York's courts read it the same way, and federal courts construing nearly identical statutes in other states have held that a collector's demand on the injured worker violates the FDCPA.

### *1. The statutory text*

Section 13-f(1) governs who may be paid for treating an injured worker, and from whom. Its operative sentence provides:

> Except as provided in [section 13-d], **no** provider of health care rendering medical care or treatment to a compensation claimant, **shall collect or receive a fee from such claimant within this state**, but shall have recourse for payment of services rendered **only** to the employer under the provisions of this chapter.

N.Y. Workers' Comp. Law § 13-f(1) (emphasis added).

Each part of that sentence closes the door on collection from the injured worker. First, the prohibition is categorical. It applies to every "provider of health care" who treats a compensation claimant, without exception for the size of the bill, the type of care, or whether the employer has paid. Second, it reaches both sides of the transaction. The provider may not "collect" a fee from the claimant, which forbids the demand, and it may not "receive" one, which forbids keeping a payment even if the claimant makes it voluntarily. Third, the bar turns on the patient's status as a "compensation claimant," and Plaintiff had been one since he filed his claim in May 2021. Compl. ¶ 20. Fourth, the sentence does not leave the provider without a remedy. It tells the provider where its remedy is: it "shall have recourse for payment of services rendered only to the employer under the provisions of this chapter." § 13-f(1). The word "only" makes the employer the exclusive source of payment. A provider whose recourse runs "only" to the employer has no recourse against

the claimant at all.

The next sentence of § 13-f(1) confirms that reading by making a claimant's payment recoverable: "Any compensation claimant who pays a fee to a provider of health care for medical care or treatment under this chapter shall have a cause of action against such provider of health care for the recovery of the money paid." *Id.* The claimant may assign that claim to the chair of the Workers' Compensation Board, who may then sue the provider on it. *Id.* The Legislature did not treat a claimant's payment as the satisfaction of a debt he owed. It treated the payment as money the provider had no right to, which the claimant, or the State on his behalf, may recover. The $50.00 Plaintiff paid toward his physician's bill is the kind of payment that sentence describes. Compl. ¶ 42; Ex. C.

Section 13-g then sets out how the provider is paid, and the claimant has no part in it. Within forty-five days after a bill is rendered to the employer, "such employer must pay the bill or notify the medical care provider or supplier . . . that the bill is not being paid and explain the reasons for non-payment." N.Y. Workers' Comp. Law § 13-g(1). If the employer does neither, the provider "may notify the board . . . that the bill has not been paid and request that the board make an award for payment of such bill," and "such award may be collected in like manner as an award of compensation." *Id.* If the employer explains its nonpayment and the parties disagree on the value of the care, "such value shall be decided by arbitration," *id.*, and the arbitrator's decision "shall be conclusive upon the parties," *id.* § 13-g(2). Even where the employer failed to secure compensation coverage at all, "the board may make an award for the value of medical services, supplies or treatment rendered to such employees," and that award "shall be made to the medical care provider or supplier entitled thereto." *Id.* § 13-g(4). At every step, nonpayment and disputes over a medical bill are resolved among the provider, the employer, and the Board. No provision

makes the claimant liable for the bill or allows the provider to turn to the claimant when the employer does not pay.

Read together, the two sections answer the precise question this case presents. A provider that treats a compensation claimant is paid by the employer, through its carrier or a Board award, and by no one else. It may not collect or receive anything from the claimant, and if it does, the claimant may sue to recover the money. A debt collector acting for the provider is in no better position: what the provider may not collect from the claimant, its collector may not collect for it. The debt EASCI demanded payment for therefore was not owed by Plaintiff, and any amount collected from him was not "permitted by law." 15 U.S.C. § 1692f(1).

***2. New York courts read the statute the same way***

New York's courts construe § 13-f exactly this way. The Appellate Division, Third Department, has explained that chiropractors, "like all medical providers who treat workers' compensation claimants, may **only** accept payment for treating an injured worker from the worker's employer." *Matter of Habif v. N.Y. State Workers' Comp. Bd.*, 206 A.D.3d 1322, 1324 (3d Dep't 2022) (citing N.Y. Workers' Comp. Law § 13-f(1)), *leave to appeal denied*, 2023 N.Y. LEXIS 98 (N.Y. Feb. 9, 2023) (emphasis added). The court added that, in practice, "the provider is typically compensated by the employer's insurance carrier." *Id.* at 1324 n.2. Months later the same court said it again: "Under Workers' Compensation Law § 13-f, a provider may only receive payment for services rendered to a workers' compensation claimant from that claimant's employer or the employer's insurance carrier." *Matter of Levi v. N.Y. State Workers' Comp. Bd.*, 212 A.D.3d 126, 128 (3d Dep't 2022). Both decisions arose from the Board's discipline of providers who took payments from a third party, and both rest on the same reading of the text: the employer, through its carrier, is the only lawful source of payment.

*Valley Rehabilitation & Medical Offices, P.C. v. Cash* applied the statute to a provider's claim against the injured worker herself. The provider sued a claimant whose claim had been determined to be covered and who had received a lump-sum award, relying on an agreement she signed making her personally responsible for its fees. 6 Misc. 3d 541, 542 (Sup. Ct. Nassau Cnty. 2004). The court dismissed the action with prejudice. *Id.* at 545. It stated the rule plainly: "The plaintiff is required to collect any fees owed for medical services rendered from the employer (carrier) and not from the claimant." *Id.* at 544 (citing cases). It explained that the Board's regulations allow a claimant to be held liable to a provider only if the claimant fails to prosecute the claim or the Board determines that the condition is not covered, and that neither had occurred because the claim had been determined to be covered. *Id.* (citing 12 N.Y.C.R.R. § 325-1.23). Plaintiff filed his claim, which made him a claimant, and the Board established it. Compl. ¶¶ 20, 37, 63; Exs. D, F at 3-4.

### 3. *Courts construing nearly identical statutes hold that collecting from the worker violates the FDCPA*

Florida's statute is nearly word for word the same as § 13-f(1). It provides that "[a] health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employer or carrier for payment for services rendered in accordance with this chapter," and that "[t]he employee is not liable for payment for medical treatment or services provided pursuant to this section except as otherwise provided in this section." *Kottler*, 460 F. Supp. 3d at 1290 (quoting Fla. Stat. § 440.13(13)(a), (g)). Both statutes forbid a provider to "collect or receive a fee from" the injured worker, and both send the provider to the employer for payment. Applying that text, the *Kottler* court held that a collection letter to the injured worker falsely represented the character and legal status of the medical debt and "violated the FDCPA as a matter of law." *Id.* at 1293. The *Malone*

court read the same provision the same way, concluding that a collector that attempts to collect such a debt "would surely violate the FDCPA because [it] would be attempting to collect a debt not validly owed." *Malone v. Accounts Receivable Res., Inc.*, 2019 LX 29108, at *4 (S.D. Fla. Nov. 21, 2019) (quoting Fla. Stat. § 440.13(13)(a)).

Colorado's statute provides that "[o]nce there has been an admission of liability or the entry of a final order finding that an employer or insurance carrier is liable for the payment of an employee's medical costs or fees, a medical provider shall under no circumstances seek to recover such costs or fees from the employee." *Edwards*, 2019 U.S. Dist. LEXIS 214113, at *28 n.10 (quoting Colo. Rev. Stat. § 8-42-101(4)). Because the collector was not legally permitted to seek the debt from the worker, the court held that the evidence was sufficient to find a violation of § 1692f(1). *Id.* at *28. Arizona's statute, A.R.S. § 23-1062.01(D), has been read the same way: injured workers who receive a workers' compensation award "are not legally responsible for medical bills covered under the award," *Casillas*, 2023 U.S. Dist. LEXIS 75416, at *4, and a debt connected to a workers' compensation claim is one "which makes it uncollectable in Arizona," *Flores*, 2023 U.S. Dist. LEXIS 5133, at *6. Both courts entered judgment for the injured worker on FDCPA liability. *Casillas*, 2023 U.S. Dist. LEXIS 75416, at *4, *7; *Flores*, 2023 U.S. Dist. LEXIS 5133, at *7, *10.

New York's statute is, if anything, stronger than these. It limits the provider's recourse to the employer "**only**," and it gives the claimant a cause of action to recover any fee paid, a remedy not found in the Florida and Colorado provisions quoted in *Kottler* and *Edwards*. N.Y. Workers' Comp. Law § 13-f(1). Every decision Plaintiff has located that construes these statutes reads them the same way: the provider's recourse is against the employer or carrier, the injured worker owes nothing, and a demand that the worker pay violates the FDCPA. The *Aves* court applied that

reasoning to New York's statute and sustained the same claims Plaintiff brings here.

#### *4. Application*

Plaintiff became a compensation claimant when he filed his claim in May 2021. Compl. ¶ 20. On December 15, 2021, the Workers' Compensation Board found that Plaintiff "had a work related injury head neck back" and authorized "[m]edical treatment and care, as necessary, for established sites of injury and/or conditions." Ex. F at 3-4. The bill EASCI sought to collect was for treatment of Plaintiff's work injury, rendered in connection with that established workers' compensation claim. Compl. ¶¶ 30, 37, 63. Under § 13-f(1), the provider could not collect or receive any fee from Plaintiff, and its recourse ran only to the employer. EASCI nonetheless demanded payment from Plaintiff and received $50.00. Compl. ¶¶ 30-32, 42; Exs. B, C. Those admitted facts, confirmed by the Board's own decisions, establish that Plaintiff did not owe the debt and that EASCI could not lawfully collect it from him. Compl. ¶¶ 29, 33, 63-64.

### C. EASCI Violated Sections 1692e(2)(A) and 1692e(10)

Section 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the "false representation of . . . the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), and the "use of any false representation or deceptive means to collect or attempt to collect any debt," *id.* § 1692e(10). Aves, 2026 LX 171349, at *11. Whether a communication violates the statute "is determined from the perspective of the objective least sophisticated consumer." *Id.* at *11 (quoting *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 173 (2d Cir. 2015)). The FDCPA is "a strict liability statute," so "there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." *Vangorden*, 897 F.3d at 436-37.

The Collection Letter told Plaintiff, in plain terms, that he owed $626.57. It said EASCI

was "trying to collect a debt that you owe," stated the "[t]otal amount of the debt now," and sought payment by providing payment instructions. Ex. B; Compl. ¶¶ 31-36. Each of those statements told Plaintiff that he was legally responsible for the bill. He was not. Compl. ¶¶ 29, 33, 63-64. Telling a person that he owes a debt he does not legally owe is a false representation of the character or legal status of that debt. *See Aves*, 2026 LX 171349, at *12-13 (collecting cases).

*Aves* is directly on point. There, as here, a New York workers' compensation claimant alleged that a collector demanded payment for treatment of her work injury even though it knew or should have known she was not liable. *Id.* at 2, 9. The court held that those allegations "are sufficient to satisfy the third element of an FDCPA claim," and that the collector's conduct "therefore falls squarely within the acts proscribed by Section 1692e." *Id.* at *12-13. Plaintiff makes the same allegations, and EASCI has admitted them by defaulting. Compl. ¶¶ 30-38, 57, 62-65.

Courts in other jurisdictions have reached the same result, and several have entered judgment for the consumer as a matter of law. In *Kottler v. Gulf Coast Collection Bureau*, a collector sent an injured worker a letter about a medical bill that provided payment options, the same features as EASCI's letter. 460 F. Supp. 3d 1282, 1293 (S.D. Fla. 2020) (affirmed *by Kottler v. Gulf Coast Collection Bureau, Inc.*, 847 F. App'x 542 (11th Cir. 2021)). Because Florida's workers' compensation law shielded the employee from the bill, those statements were false representations of the character or legal status of the debt, and the court concluded: "As a result, the Letter violated the FDCPA as a matter of law." *Id.*; *see also Flores*, 2023 U.S. Dist. LEXIS 5133, at *7 (granting the consumer summary judgment because the collector "violated 15 U.S.C. § 1692e by misrepresenting the debt as one personally owed by Plaintiff when it was, in fact, an uncollectable worker's compensation debt"); *Casillas v. Thunderbird Collections Specialists Inc.*,

No. CV-21-01588-PHX-SMB, 2023 U.S. Dist. LEXIS 75416, at *4 (D. Ariz. May 1, 2023) (granting the consumer summary judgment on liability because the collector's representation that he was responsible for medical bills covered by an Arizona workers' compensation award was "false, deceptive, and misleading"); *Casillas v. Andrew M Ellis Law PLLC*, No. CV-21-01588-PHX-SMB, 2022 U.S. Dist. LEXIS 202535, at *2-3 (D. Ariz. Nov. 7, 2022) (denying judgment on the pleadings on claims that a collector sued to collect a debt arising from an accepted workers' compensation claim); *Malone*, 2019 U.S. Dist. LEXIS 224951, at *4 (a collector that knowingly attempts to collect a debt compensable through workers' compensation "would surely violate the FDCPA because [it] would be attempting to collect a debt not validly owed").

Plaintiff's claim is not a mere disagreement over whether a debt is valid. The *Aves* court rejected that characterization of the same claim, explaining that a claim that the collector misrepresented who owes the debt "is distinct from a mere dispute over the validity of the Debt." *Aves v. Network Recovery Servs*., 2026 LX 171349, at *13. Here the bar on collection comes from a statute, and the facts that trigger it are admitted. Compl. ¶¶ 19-29.

Nor does it matter that Plaintiff paid rather than disputed the debt first. The Second Circuit has held that nothing in the FDCPA suggests that a debtor's ability to state a claim under § 1692e or § 1692f "is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g." *Vangorden*, 897 F.3d at 438 (quoting *Russell v. Absolute Collection Servs.*, 763 F.3d 385, 392 (4th Cir. 2014)). That rule applies with full force to workers' compensation debts. *See Casillas*, 2023 U.S. Dist. LEXIS 75416, at *5-6 (relying on *Vangorden* and holding that the injured worker had the option, not the obligation, to dispute the debt before suing); *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 248 (3rd Cir. 2014) ("For these reasons, a consumer is not required to seek validation of a debt he or she believes is inaccurately described in a debt

communication as a prerequisite to filing suit under § 1692e.”). Likewise, a collector’s intent is relevant only to the bona fide error defense, not to liability, because of the strict liability nature of the statute. *Vangorden*, 897 F.3d at 442.

EASCI’s conduct also violated § 1692e(10). It used the false representation that Plaintiff owed the debt as the means to collect it, and it succeeded in collecting payment. Compl. ¶¶ 42, 62-66; Ex. C.

**D. EASCI Violated Section 1692f(1)**

Section 1692f prohibits “unfair or unconscionable means to collect or attempt to collect any debt,” including the “collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law.” 15 U.S.C. § 1692f(1); *Aves*, 2026 LX 171349, at *12-13. EASCI attempted to collect, and did collect, money from Plaintiff that New York law did not permit it to collect from him. Compl. ¶¶ 42, 70-71; Ex. C. Courts treat that conduct as a § 1692f(1) violation. *See Edwards v. BC Servs.*, 2019 U.S. Dist. LEXIS 214113, at *28-29 (D. Colo. Dec. 10, 2019) (denying the collector summary judgment because “the evidence is sufficient to support a finding that Defendant’s attempts to collect the Subject Debt were not ‘permitted by law’ and thus prohibited by Section 1692f(1)” where the debt was covered by workers’ compensation); *Young v. NPAS, Inc.*, 361 F. Supp. 3d 1171, 1188 (D. Utah 2019) (finding that debt collector violated Section 1692f(1) by seeking to collect a debt that was subject to workers' compensation, even if the debt collector did not have actual knowledge that it was subject to workers' compensation, because the FDCPA is a strict liability statute). New York law does not merely fail to authorize this amount; it forbids the provider to “collect or receive” it and gives the claimant a cause of action to recover it. N.Y. Workers’ Comp. Law § 13-f(1); *see* Part IV.B.1, *supra*. The *Aves* court allowed the § 1692f claim to proceed alongside the § 1692e claim on the

same facts. *Aves*, 2026 LX 171349, at *12-13.

## V. PLAINTIFF IS ENTITLED TO DAMAGES, ATTORNEYS' FEES, AND COSTS

A debt collector that violates the FDCPA is liable for the consumer's actual damages, additional statutory damages of up to $1,000, and, "in the case of any successful action . . . the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a); *Bennett*, 2017 U.S. Dist. LEXIS 2345, at *15-17.

### A. Actual Damages

*Economic loss.* Plaintiff paid EASCI $50.00 on April 15, 2026. The payment confirmation shows the payment to "Eastern" on the same account number that appears as the reference number on the Collection Letter. Ex. C; Ex. B; Compl. ¶ 42. That amount is certain and requires no hearing.

*Emotional distress.* The Collection Letter caused Plaintiff real and specific distress. It told him that he owed $626.57 for his medical treatment and instructed him to make payment. Ex. B; Compl. ¶¶ 30-36. Plaintiff had understood that the medical bills for his work injury were covered by his workers' compensation claim. When he read the letter, he became nervous, and then he panicked. If EASCI was right that he owed this bill, he believed he would also be responsible for the other medical bills from his work injury, costs he could never pay, and he feared the debt would ruin him financially. Ex. A ¶ 11-13. He could not afford even the balance EASCI demanded, and that caused him significant stress and anxiety. Compl. ¶ 43. He worried that he had been mistaken about his legal obligation, that he would face legal consequences if he did not pay, and that the debt would grow with interest and be reported to the credit bureaus, damaging his credit. *Id.* ¶¶ 44-46. He suffered embarrassment, frustration, and lost sleep. *Id.* ¶¶ 48, 60. Under that pressure, he gave in: out of fear that he was legally responsible, he paid EASCI $50.00 toward a debt he did not owe. *Id.* ¶ 42; Ex. C. His payment shows how real the fear was. Like the claimant in *Aves*, he

"did exactly what Defendant demanded." *Aves*, 2026 LX 171349, at *10 (emphasis omitted). Plaintiff requests $20,000.00 for this harm or, in the alternative, that the Court set the amount on the declarations submitted or at an inquest under Rule 55(b)(2).

**B. Statutory Damages of $1,000**

"The decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court." *Bennett*, 2017 U.S. Dist. LEXIS 2345, at *15 (quoting *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998)). The statute directs the Court to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Katz*, 2013 U.S. Dist. LEXIS 129728, at *8 (quoting 15 U.S.C. § 1692k(b)(1)).

The full $1,000 is warranted. EASCI told an injured worker that he owed money the law forbids collecting from him, and it took his money. Compl. ¶¶ 33, 42; Ex. C. Its default admits that it acted knowingly and willfully to coerce payment, and that this is how it does business: it collects medical debts without checking for workers' compensation coverage, though it knows many of those debts arise from such claims, and it maintains no procedures to avoid the violation. *Id.* ¶¶ 16-17, 37-40, 53-58, 65. By defaulting, EASCI has also foreclosed discovery into its intent and forfeited the bona fide error defense, on which it bears the burden. *See Bennett*, 2017 U.S. Dist. LEXIS 2345, at *16 (awarding the statutory maximum where the collector did "not argue otherwise by virtue of its default"). Unlike the single voicemail in *Katz*, EASCI's violation was intentional, part of a practice, and caused an actual loss. Plaintiff requests $1,000 in statutory damages.

**C. Attorneys' Fees and Costs**

The FDCPA entitles a successful plaintiff to costs and a reasonable attorney's fee. 15

U.S.C. § 1692k(a)(3); *Bennett*, 2017 U.S. Dist. LEXIS 2345, at *16-17. Costs for the court filing fee and service of process are recoverable. *Id.* at *22 (citing *Katz*). Plaintiff requests leave to file a fee and cost application within 21 days after entry of judgment. Fees and costs will continue to accrue through any inquest or hearing the Court may hold and through entry of judgment, so a breakdown submitted now would be incomplete and would have to be superseded.

**D. No Hearing Is Needed**

The economic loss and statutory damages rest on the admitted allegations and the documents attached to this motion, so the Court can award them without a hearing. *See Action S.A.*, 951 F.2d at 508; *Cement & Concrete Workers*, 699 F.3d at 234. If the Court concludes that the emotional distress award requires live testimony, Plaintiff asks that the Court enter judgment on liability and on the economic and statutory damages and schedule an inquest on the remaining actual damages.

**CONCLUSION**

For these reasons, Plaintiff respectfully asks the Court to enter a default judgment against Eastern Account System of Connecticut, Inc. that (1) finds EASCI liable under 15 U.S.C. §§ 1692e(2)(A), 1692e(10), and 1692f(1); (2) awards Plaintiff $50.00 in actual economic damages; (3) awards Plaintiff $20,000.00 in actual damages for emotional distress or, in the alternative, sets an inquest on those damages; (4) awards Plaintiff $1,000.00 in statutory damages; (5) grants Plaintiff leave to file an application for attorneys' fees and costs within days of judgment; (6) awards post-judgment interest under 28 U.S.C. § 1961; and (7) grants such other relief as the Court deems just.

Dated: October 26, 2026

Respectfully submitted,

**CONSUMER ATTORNEYS PLLC**

*/s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
*Admitted Pro Hac Vice # phv209687*
68-29 Main Street
Flushing, NY 11367
T: (718) 640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

Emanuel Kataev, Esq., CT Bar# 435851
6829 Main Street
Flushing, NY 11367-1305
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
ekataev@consumerattorneys.com

*Attorneys for Plaintiff*
*Julio Yadaicela*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, I electronically filed the foregoing, with its exhibits, with the Clerk of the Court using the CM/ECF system. I further certify that on the same date I caused a true copy of the foregoing, with its exhibits, to be served by first-class United States mail, postage prepaid, on the defaulted Defendant at the address where it was served with process:

**Eastern Account System of Connecticut, Inc.**
**3 Corporate Drive, 2nd Floor**
**Danbury, CT 06810**

**CONSUMER ATTORNEYS PLLC**
By: */s/ Ann Stevenson*